**In re ALLEGHENY INTERNATIONAL, INC., Sunbeam Corporation, Sunbeam Holdings, Inc., Almet/Lawnlite, Inc., and Chemetron Corporation, Debtors.**

Bankruptcy No. 88-00448.
Motion Nos. 89-1836M, 89-4482M
AI-07, AI-198.

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 17, 1989.

See also, Bkrtcy., 100 B.R. 247.

M. Bruce McCullough and Joan G. Dorgan, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for debtors.

Owen W. Katz, Bernstein and Bernstein, P.C., Pittsburgh, Pa., and Michael R. Sment, Rich & Ezer, Los Angeles, Cal., for Dixie O'Dell, Gerald O'Dell, and Estate of Clyde Herman O'Dell.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

Two matters are presently before the court. Dixie O'Dell, Gerald O'Dell and the Estate of Clyde Herman O'Dell (the "O'Dell movants") have moved for relief from the automatic stay. The debtor has filed a Motion for Adjudication of Punitive Damages Issues (the "Motion for Adjudication"). The motion for relief from stay is granted, as set forth below. The Motion for Adjudication and denial of the punitive damages is not granted. However, if a court awards punitive damages to any creditor, the issue of punitive damages may be revisited in another procedural setting.

### I. *Facts*

On February 20, 1988, Allegheny International, Inc. ("Allegheny International"), and four of its subsidiaries, Sunbeam Corporation, Sunbeam Holdings, Inc., Almet/Lawnlite, Inc., and Chemetron Corporation, filed petitions for reorganization under chapter 11 of the Bankruptcy Code. Fourteen other subsidiaries of Allegheny International, Inc. filed for relief under chapter 11 on May 3, 1988.[1]

The debtor, through various subsidiaries, manufactured consumer and other products which have been implicated in numerous civil actions under products liability and related theories. The O'Dell movants had instituted one such action in the United States District Court for the Northern District of Oklahoma (the "Oklahoma civil action") alleging, inter alia, that Clyde Herman O'Dell was fatally injured by an elec-

---

1. In this opinion, the court refers to both groups of debtors collectively as the debtor or Allegheny International.

tric blanket manufactured by Northern Electric Company, a division of Sunbeam Corporation. That civil action, as well as all others pending against the debtor, was stayed by the filing of the instant bankruptcies. 11 U.S.C. § 362.

Section 362(d) of the Bankruptcy Code, 11 U.S.C. § 362(d), in pertinent part, provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—(1) for cause...." In this case, the court has developed a practice of granting relief from stay, with the debtor's consent, so that creditors asserting claims for personal injury and/or wrongful death, which this court is statutorily barred from hearing, 28 U.S.C. § 157(b)(2)(B), may liquidate their claims in the appropriate non-bankruptcy forums. The debtor has not consented to such relief, with respect to the O'Dell movants, because the Oklahoma civil action seeks a large award of punitive damages.[2] It has been argued that punitive damages should be heard separately from the personal injury damages claim.

The debtor is concerned that large punitive damages awards will frustrate its plan of reorganization. The debtor asserts that it currently faces "at least 53 claims ... asserting punitive damages. Forty-three of such claims assert liquidated amounts aggregating approximately $167 million. The remaining ... claims assert punitive damages in unliquidated amounts." Motion for Adjudication, ¶ 1. The debtor contends that it has expended, or will have to expend, significant time and money to litigate, case-by-case, claims involving punitive damages. Moreover, the debtor asserts that punitive damages claims will significantly interfere with consummation of a plan of reorganization. Specifically, the debtor contends that a large reserve would have to be created to provide for punitive

damages claims which are entitled to receive cash at consummation. The reserve contemplated by the debtor "would add an impossible burden to the Debtor's cash requirements at consummation." *Id.* at ¶ 4. For these reasons, the debtor has moved for an adjudication that punitive damages claims shall be disallowed in this chapter 11.

## II. *In Re A.H. Robins*

The Bankruptcy Code neither clearly mandates nor clearly proscribes the allowance of claims for punitive damages in reorganizations under chapter 11. The seminal case on the applicability of punitive damages in chapter 11 is *In re A.H. Robins Co., Inc.*, 89 B.R. 555 (E.D.Va.1988). We will discuss that case with some detail, since it raises issues germane to the instant case and is central to the arguments of both the debtor and the O'Dell movants.

A.H. Robins ("Robins") was the exclusive manufacturer of the Dalkon Shield, an intrauterine device, which ultimately resulted in multitudinous personal injuries of varying degrees of severity. Injured users of the device began to file claims for compensation and punitive damages against the company in 1971. By 1985, when Robins sought relief under chapter 11 of the Bankruptcy Code, it had settled 9,238 claims for approximately $530,000,000, but "still faced over five thousand pending cases in state and federal court." *Id.* at 557.

As the result of just seven judgments rendered prepetition, various courts awarded approximately $13,227,000 in punitive damages against Robins. Additionally, "there were over $7,000,000 in punitive damages awarded that were pending appeal when the debtor filed for relief." *Id.* at 558. The district court noted that the punitive damages awards were unpredictable; such awards ranged from $5.00 to $7,500,000.00.

---

2. The record is unclear about the exact amount of punitive damages. The debtor represents that the complaint in the Oklahoma civil action "seeks about a million in punitive damages, and in addition, there's pending a motion in the

District Court in Oklahoma to amend the complaint to increase the punitive damage demand for $10,000,000." Transcript of April 20, 1989 hearing, at page 3.

Robins filed for relief under chapter 11 after the increasing awards, both compensatory and punitive, depleted its operating funds and eliminated its sources of credit. The plan of reorganization had to maximize recovery to the continuing stream of claimants, as well as other creditors. The district court concluded that punitive damages were inconsistent with that end.[3]

The district court rejected the argument of the Official Committee of Unsecured Creditors (the "Unsecured Creditors") that section 502(b)(1) of the Bankruptcy Code, 11 U.S.C. § 502(b)(1), proscribes punitive damages in a reorganization under chapter 11. That section, in pertinent part, provides as follows:

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under ... applicable law for a reason other than because such claim is contingent or unmatured....

The Unsecured Creditors argued that further punitive damage awards against Robins would contravene "applicable law," as that term is used within 11 U.S.C. § 502(b)(1). The Unsecured Creditors' argument was premised on the majority rule that punitive damages have "only two purposes: (1) to punish the defendant, and (2) to deter future wrongdoing." Since "Robins had already expended more money in satisfaction of punitive damages awards than it had received from gross receipts of the sale of the Dalkon Shield ... any further award of punitive damages could not deter the company from future wrongful conduct." *Id.* at 559. Therefore, the Unsecured Creditors reasoned that "any further award of punitive damages ... would be contrary to applicable law," since "no legitimate purpose can any longer be served by

the award of punitive damages." *Id.* at 559.

The *Robins* court dismissed the argument of the Unsecured Creditors by noting that the majority rule is not unanimous. The *Robins* court could not conclude that additional punitive damage could serve "no legitimate purpose" under a theory adopted by a minority jurisdiction. Thus, the court declined to use the majority rule as a broad brush to eliminate punitive damages, obviating the argument of the unsecured creditors.

The Dalkon Shield Claimants Committee (the "Claimants"), like the O'Dell movants in the instant case, argued that section 1129(a)(7)(A) provides for punitive damages. That section, in pertinent part, provides as follows:

(7) With respect to each impaired class of claims or interests—

(A) each holder of a claim or interest of such class—

. . . . .

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date....

The Claimants argued that section 1129(a)(7)(A) mandates that a "holder of a claim rejecting a plan must receive as much as the holder would receive if the debtor were liquidated under chapter 7." *Id.* at 560. The Claimants then noted that "Section 726(a)(4) provides for a fourth priority payment of an allowed claim for punitive damages in a chapter 7 liquidation." A fortiori, the Claimants argued, section 1129(a)(7)(A) requires punitive damages.

The district court flatly rejected the argument of the Claimants: "What the Claimants Committee overlooks or ignores is that Section 726 is not applicable to a Chapter 11 case." *Id.* at 560. The court noted that section 103 of the Bankruptcy Code, 11 U.S.C. § 103, which governs the

---

**3.** The opinion of the district court is unclear about the procedural setting underlying its deci- sion.

applicability of the various chapters of the Bankruptcy Code, provides that subchapters I and II of chapter 7, which encompass section 726, "apply only in a case under such chapter." However, it is fair to observe that even in chapter 7, punitive claims are subordinated to fourth priority.

The *Robins* court then discussed the history of disallowing claims because of equitable considerations: "In the past, bankruptcy courts have resorted to their equitable powers to determine whether a claim will be allowable ... [T]he court has far reaching powers to 'sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate.' " *Id.* at 561 (quoting *Pepper v. Litton*, 308 U.S. 295, 308, 60 S.Ct. 238, 246, 84 L.Ed. 281 (1939)). The district court determined that the reorganization of Robins would fail unless punitive damages were disallowed. In so holding, the court recognized the "wild card characteristic" of punitive damages. *Id.* at 562. The court observed that punitive damages can never be accurately estimated. Consequently, the court decided that the debtor could never achieve the several steps necessary to confirming a plan of reorganization:

> [T]he inability to quantify the potential amount of Robins' liabilities for punitive damages claims would make it virtually impossible for this Court to have determined whether Robins would be capable of meeting its obligations under the plan. It would be similarly difficult ... to determine whether the "best interest of the creditors" test of Section 1129(a)(7) had been met or, in the event any class had rejected the plan, whether the elements of cramdown under Section 1129(b)(2)(B) could have been satisfied. Given the unquantifiable nature of punitive damage claims, it is also unlikely that a disclosure statement which meets the "adequate information" standard of Section 1125 could have been provided to creditors....

*Id.*

III. *Applicability of In re A.H. Robins*

 We find the reasoning of the district court in *Robins* to be very sound. We concur that section 502 clearly does not proscribe punitive damages. We also agree that section 1129(a)(7)(A) does not mandate punitive damages because section 726(a)(4) is inapplicable to chapter 11. In doing so, we reject the absolute position of the O'Dell movants in the instant case.

Even more appealing to this court in circumstances such as *In re A.H. Robins* and *In re Johns–Manville Corp.*, 68 B.R. 618 (Bankr.S.D.N.Y.1986), *aff'd*, 78 B.R. 407 (S.D.N.Y.1987), *aff'd sub nom.*, *Kane v. Johns–Manville Corp.*, 843 F.2d 636 (2d Cir.1988), is the statistical probability that early punitive damages would exhaust the estate before similar, but later, personal injury claims could be paid. This would violate long-standing bankruptcy distribution principles and would appear to support special classification and review of punitive damages.

 We believe that the equitable powers of the bankruptcy court enable us to eliminate, subordinate, or limit punitive damages. In this connection, we share the same concern as did the district court in *In re Robins* concerning the "wild card" effect of punitive damages. As evidenced by the Motion for Adjudication, the debtor also shares that concern. However, we decline to take any action to limit punitive damages at this time, because we believe such action is premature. It appears that no extraordinary punitive damages claims have yet been liquidated. Nor do the pending punitive damages claims implicate any inherently dangerous products.

Although we have noted our concern about the potential wild card effect, the circumstances in the instant case appear to differ greatly from those in *In re A.H. Robins*. Robins was a solvent company until it was deluged by products liability awards, both compensatory and punitive. Moreover, its prospective liability was staggering. Allegheny International had numerous problems which caused the need for chapter 11, but the court is unaware of any suggestion that the debtor's financial decline was caused by potential products

liability damages. The debtor manufactured relatively mundane products, such as electric blankets, which do not appear to have caused the widespread harm as did the Dalkon Shield or asbestos. *See In re Johns–Manville Corp.* Moreover, the debtor continues to manufacture these products—Robins removed the subject product from the market. Although punitive damages may be a significant problem for Allegheny International, they are not the major problem facing this debtor. As the O'Dell movants suggest, the record needs to be developed further with respect to these matters. Among other things, this court is unable to determine the debtor's liquidated exposure to punitive damages. The mere inclusion by a plaintiff of a punitive damage claim is no indication of its merit.

### IV. *The Evolving Law of Punitive Damages*

The law of punitive damages is presently in a state of flux. The Supreme Court has recently held that punitive damages do not violate the Excessive Fines Clause of the Eighth Amendment of the Constitution. *Browning Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.,* — U.S. —, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). In that case, however, the court stated that it may consider, in the appropriate case, whether excessive punitive damages contradict the Due Process Clause of the Fourteenth Amendment. *Id.* 109 S.Ct. at 2921.

One district court has attempted to limit punitive damages by using the Due Process Clause. In *Juzwin v. Amtorg Trading Corp.,* 705 F.Supp. 1053, 1065 (D.N.J.1989), a case seeking punitive damages for injuries allegedly caused by asbestos, the court declared that "[d]ue process requires that a limit be placed upon a defendant's liability for punitive damages for a single cause of conduct." Therefore, the court ruled that it would dismiss claims for punitive damages with respect to individual defendants in the case sub judice upon a showing that those defendants had already been subjected to punitive damages. Subsequently, however, the district court granted reconsideration of its order. *Juzwin v. Amtorg*

*Trading Corp.,* 718 F.Supp. 1233 (D.N.J. 1989). Although the court reiterated its due process concerns, the court was concerned "about the unfairness of applying its ruling retroactively absent prior notice to those adversely affected...." *Id.* The court also observed that the only equitable remedy to the due process problem is uniform legislation.

The litigation literature asserts that punitive damages have become a litigation strategy to encourage other settlements. This may be true, but we are unable to make any such determination until we begin to learn the debtor's actual liability for punitive damages.

### V. *Conclusion .*

■ In light of the judicial uncertainty about limiting punitive damages, the court believes that a blanket prohibition against punitive damages at this time would be improvident. Because the essence of bankruptcy jurisdiction is the allowance or disallowance of claims, the allowance or disallowance of punitive damages is more appropriate when a liquidated claim is returned to the bankruptcy court and when the debtor or other party objects individually to that claim. *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238. Alternatively, such matters may be germane to the plan of reorganization. At some later date, however, the court may determine that punitive damages are inappropriate in toto or may limit punitive damages in some other way, such as fixing an amount of punitive damages in toto and placing such punitive damages in a separate class to be distributed pro rata. Any of the aforementioned procedures would be consistent with the equitable power described in *In re Robins.*

■ For the reasons stated above, the Motion for Adjudication is denied without prejudice. The motion of the O'Dell movants for relief from stay is granted. However, we are aware that a finder of fact may adjust an award upward to compensate for the perception that chapter 11 results in a recovery of less than 100%. Therefore, to protect the debtor from an

excessive award of punitive damages, we will order the O'Dell movants not to disclose, or request a result in the Oklahoma civil action based on, the instant bankruptcy proceeding. Additionally, any award of punitive damages must be found separately from the economic damages which are also liquidated.