Susan COHN and Walter Cohn, her husband, Appellants,

v.

G.D. SEARLE & CO., Appellee,

Irwin I. Kimmelman, Esq., Attorney General of New Jersey, Intervenor.

No. 85–5048.

United States Court of Appeals, Third Circuit.

Argued Nov. 5, 1985.

Decided Jan. 7, 1986.

As Modified on Denial of Rehearing March 12, 1986.

Walter R. Cohn (argued), Thomas E. Cohn, South Orange, N.J., for appellants.

Irwin I. Kimmelman, Atty. Gen. of N.J., James J. Ciancia, Harry Haushalter (argued), Trenton, N.J., for intervenor.

Raymond M. Tierney, Jr., Susan M. Sharko, Shanley & Fisher, P.C., Morristown, N.J., William P. Richmond, David W. Carpenter (argued), Kathleen Clubb Kauff-

man, Sidley & Austin, Chicago, Ill., for appellee.

Patricia A. Mattern, Rawle & Henderson, Philadelphia, Pa., for amicus curiae, Kelsey-Hayes Co.

Richard T. Conway, David Booth Beers, I. Michael Greenberger, Shea & Gardner, Washington, D.C., Joseph P. La Sala, Joseph F. Lagrotteria, Robinson, Wayne, Levin, Ricco & La Sala, Newark, N.J., for amicus curiae, Brinco Mining Ltd.

Robert H. Jaffe, Howard G. Schlesinger, Jaffe & Schlesinger, P.A., Springfield, N.J., for amicus curiae Asbestos plaintiffs Assn.

Before SEITZ, WEIS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Plaintiffs Susan Cohn and Walter R. Cohn, husband and wife, appeal from the final summary judgment of the district court dismissing their complaint as untimely. Plaintiffs are residents of New Jersey; defendant G.D. Searle & Co. (Searle) is a Delaware corporation whose principal place of business is in Illinois. The district court's jurisdiction over this case was grounded in diversity, 28 U.S.C. § 1332 (1982). We have appellate jurisdiction under 28 U.S.C. § 1291 (1982).

### I.

The serpentine course of this litigation may be adequately charted from the five published opinions it has generated,[1] and there is no need to do more here than briefly note its highlights.

Plaintiffs brought suit in 1974 in the Superior Court of New Jersey. The complaint alleged that Susan Cohn suffered a stroke in 1963 that was caused by her use of the oral contraceptive Enovid, manufactured by Searle. Liability was premised on various state-law tort theories.

After removing the case to federal court, Searle moved for summary judgment on the ground that the suit was untimely under New Jersey's two-year statute of limitations for tort actions, N.J.Stat.Ann. 2A:14–2 (West 1969). Plaintiffs argued in response that the action was timely because N.J.Stat.Ann. 2A:14–22 (West 1969) (the tolling statute), tolled the statute of limitations.[2] The tolling statute provides that the statute of limitations is tolled in any action against a foreign corporation not "represented" in New Jersey by an agent for service of process, for as long as the defendant remains unrepresented. Plaintiffs argued—and all parties concede here—that Searle was unrepresented in New Jersey at all relevant times.

Defendant responded, *inter alia*, by arguing that the tolling statute violated the Equal Protection and Due Process clauses of the United States Constitution. The district court accepted Searle's equal protection argument and dismissed the complaint as time-barred.[3]

---

**1.** *Cohn v. G.D. Searle & Co.,* 447 F.Supp. 903 (D.N.J.1978), *rev'd sub nom. Hopkins v. Kelsey-Hayes, Inc.,* 628 F.2d 801 (3d Cir.1980), *vacated and remanded,* 455 U.S. 404, 102 S.Ct. 1137, 71 L.Ed.2d 250 (1982), *remanded sub nom. Hopkins v. Kelsey-Hayes, Inc.,* 677 F.2d 301 (3d Cir.1982), *on remand,* 598 F.Supp. 965 (D.N.J.1984).

**2.** The tolling statute reads in relevant part:
"If any person against whom there is any of the causes of action specified in sections 2A:14–1 to 2A:14–5 and 2A:14–8 ... is not a resident of this state when such cause of action accrues.... or if any corporation ... not organized under the laws of this state, against whom there is such a cause of action, is not represented in this state by any person or officer upon whom summons or other original process may be served, when such a cause

of action accrues or at any time before the expiration of the times so limited, the time or times during which such person ... is not residing within this state or such corporation ... is not so represented within this state shall not be computed as part of the periods of time within which such an action is required to be brought commenced by the section. The person entitled to any such action may commence the same after the accrual of the cause therefor, within the period of time limited therefor by such section, exclusive of such time or times of nonresidence or nonrepresentation."

**3.** In a separate, unreported opinion, the district court found that plaintiffs became aware of the possible link between Enovid and Susan Cohn's stroke no later than 1970. Thus, under New

This court reversed on appeal, holding that the statute violated neither equal protection nor due process.[4] Although Searle's brief before this court also attacked the tolling statute on Commerce Clause grounds, our opinion did not address that issue.

The Supreme Court, on certiorari, affirmed this court's equal protection and due process holdings, but remanded for further consideration of Searle's Commerce Clause claims. The Court declined to reach that issue, first, because it had not been addressed here or in the district court, and second, because of a perceived ambiguity as to the manner in which a foreign corporation could become "represented" within the meaning of the tolling statute. We in turn remanded to the district court to consider those issues.

Following our remand, but before the district court could issue its decision, the Supreme Court of New Jersey decided *Coons v. American Honda Motor Co.,* 94 N.J. 307, 463 A.2d 921 (1983) (*Coons I*). In that case, whose operative facts were similar in relevant respects to those here, the court resolved the ambiguity in the state law perceived by the Supreme Court by holding that a corporation could only be represented in the state by obtaining a certificate of authority to do business there. *See* N.J.Stat.Ann. 14A:13–4 (1969). As noted by the court, a corporation thus registered is subject, *inter alia,* to personal jurisdiction in any lawsuit commenced in

New Jersey. The New Jersey court went on to hold, however, that the tolling statute, thus interpreted, was a "forced-licensure provision" which violated the Commerce Clause.

Subsequently, on rehearing, the court held that its invalidation of the tolling statute would not be accorded retroactive effect[5]; thus, "the statute of limitations as to foreign, unrepresented corporations commences to run as of" August 3, 1983, the date of the *Coons I* decision. *Coons v. American Honda Motor Co.,* 96 N.J. 419, 476 A.2d 763 (1984) (*Coons II*). It held further that even the litigants in the case before it would continue to be governed by the tolling statute. The court stated explicitly that the nonretroactivity of *Coons I* was a matter of state law.

After the New Jersey Supreme Court handed down its decision in *Coons II,* Searle renewed its summary judgment motion in the district court to dismiss the complaint as untimely, again arguing that the tolling statute violated the Commerce Clause. Plaintiffs apparently did not contend, at least in their briefs, that the tolling statute was consistent with the Commerce Clause, but argued instead—as they do here—that the holding in *Coons II* that the statute was only invalid prospectively was binding on the federal district court as an interpretation of state law. Alternatively, they argued that federal retroactivity principles dictated the same result reached in

Jersey's discovery rule, the cause of action accrued at that time, and the statute of limitations ran out two years later. *See Lopez v. Swyer,* 62 N.J. 267, 300 A.2d 563 (1973); *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 570–71 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

4. We affirmed the district court's statutory holding that Searle was "unrepresented" in New Jersey between 1963 and 1974, and was thus subject to the tolling statute. Following *Velmohos v. Maren Engineering Corp.,* 83 N.J. 282, 416 A.2d 372 (1980), which was decided while the Cohns' appeal was pending, we held further that the tolling statute applied although Searle was at all times subject to long-arm personal jurisdiction.

5. To avoid terminological confusion, the following definitions are in order. "Retroactive" describes judgments applicable in all cases, regardless of when the cause of action arose or the case was litigated. "Nonretroactive" judgments are those that apply the "new" law to the parties before the court, but the "old" law to parties to whom some critical event (e.g., the accrual of a cause of action) occurred before the date of the decision. "Prospective" judgments are equivalent to nonretroactive ones, except that the old law is applied even to the parties before the court. *See Marino v. Bowers,* 657 F.2d 1363, 1375 n. 4 (3d Cir.1981) (Weis, J., dissenting). *See generally* Beytagh, *Ten Years of Non-Retroactivity: A Critique and a Proposal,* 61 Va.L.Rev. 1557 (1975); R. Aldisert, *The Judicial Process* 877–938 (1976).

*Coons II.* The district court granted Searle's motion and dismissed the complaint. It held, first, that the tolling statute violated the Commerce Clause. Second, it rejected plaintiffs' contention that it was bound by *Coons II* to apply its Commerce Clause holding nonretroactively, and, applying federal retroactivity principles, held that retroactive application was proper. This appeal followed.

## II.

■ Plaintiffs reiterate their contention that under *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we are obliged to follow the New Jersey Supreme Court in applying its *Coons I* holding prospectively. This argument gravely misconceives the *Erie* doctrine. The basis of our jurisdiction here is diversity, but it does not follow that all issues in this case are to be decided under state law. Rather, although we are required to defer to the state's highest court as the ultimate arbiter of the meaning of state law, that law is only applicable "where the Constitution or treaties of the United States or Acts of Congress [do not] otherwise require or provide." 28 U.S.C. § 1652 (1982) (the Rules of Decision Act). *See Donegal Steel Foundry Co. v. Accurate Prods. Co.,* 516 F.2d 583, 587 n. 6 (3d Cir.1975); *Maternally Yours, Inc. v. Your Maternity Shop, Inc.,* 234 F.2d 538, 540–41 n. 1 (2d Cir. 1956). Where a state statute is held to violate the federal Constitution, the retroactivity *vel non* of that holding is similarly a matter of federal law which we must determine independently. *Chapman v. California,* 386 U.S. 18, 21, 87 S.Ct. 824, 826, 17 L.Ed.2d 705 (1967). *Cf. Pierzga v. Ford Motor Co., Inc.,* 778 F.2d 149 at 151 (3d Cir.1985) (following state court with respect to retroactive application of *state law* holding); *Ettinger v. Central Penn*

*National Bank,* 634 F.2d 120, 124 (3d Cir. 1980) (same).

## III.

■ We have not been asked to consider the correctness of the district court's holding that the tolling statute violates the Commerce Clause, and consequently we do not reach that question.[6] Instead, we will assume without deciding that it was answered correctly by the district court. Thus, the only issue before us is whether the district court correctly resolved the secondary matter of retroactivity. Our standard of review is plenary.

In *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Court stated a three-factor test for determining whether a new decision is to be applied retroactively:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective application would further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

404 U.S. at 106–07, 92 S.Ct. at 355–56 (citations omitted). *Chevron's* approach to the question of retroactivity is premised on "our recognition that statutory or even judge-made rules of law are hard facts on

---

6. Appellant's initial brief did not challenge the district court's Commerce Clause holding in either its statement of issues or its argument. Fed.R.App.P. 28(a) requires appellants to include in their initial brief "[a] statement of the issues presented for review," and it is well settled that courts of appeal will not consider is-

sues not raised in the initial brief. *See* 9 J. Moore, *Moore's Federal Practice* ¶ 228.02[2.–1]. While this rule has been relaxed on occasion, *e.g. Consumers Union of U.S., Inc. v. Federal Power Comm'n,* 510 F.2d 656, 662 (D.C.Cir. 1974), we see no reason to do so here, especially in light of our ultimate disposition of the case.

which people must rely in making decisions and in shaping their conduct." *Lemon v. Kurtzman,* 411 U.S. 192, 199, 93 S.Ct. 1463, 1468–69, 36 L.Ed.2d 151 (1973). Under the first prong of the *Chevron* test, therefore, we look to the state of the law prior to the decision sought to be applied retroactively to determine whether that decision had the potential to upset reasonable reliance upon prior law. *Marino v. Bowers,* 657 F.2d 1363, 1367 (3d Cir.1981) (in banc). The question here, then, is whether the Cohn's claimed reliance on the tolling statute was reasonable.[7]

As noted in *Coons I,* 96 N.J. at 431–32, 476 A.2d at 771, the tolling statute in its present form dates to 1949, and "its origins [are] traceable to 1820." Of course, the antiquity of a statute is no guarantee of its constitutionality. But the tolling statute had previously been upheld against constitutional attack, albeit on equal protection grounds, in *Lemke v. Bailey,* 41 N.J. 295, 196 A.2d 523 (1963), and no reported decision had referred to possible Commerce Clause difficulties. Indeed, we are unaware of any reported decision before this one in which a Commerce Clause objection was raised with respect to any similar statute, although numerous such statutes exist. *See* Annot., 55 A.L.R.3d 1158.

Nor were the Commerce Clause principles involved so clear as to make the invalidity of the tolling statute a foregone conclusion. Searle stresses the well-settled precedents on which the *Coons I* court, and the district court here, relied. *See Allenberg Cotton Co. v. Pittman,* 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974); *Dahnke-Walker Co. v. Bondurant,* 257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239 (1921);

*Sioux Remedy Co. v. Cope,* 235 U.S. 197, 35 S.Ct. 57, 59 L.Ed. 193 (1914). However, it seems plain that *Coons I* was an extension of the holdings in those cases. The statutes in question in *Allenberg Cotton, Sioux Remedy,* and *Dahnke-Walker* entirely closed the courts of the state to unregistered foreign corporations; by contrast, the tolling statute affects only the statute of limitations in actions against such corporations. And, given the highly flexible nature of doctrine in this area, *see, e.g.,* L. Tribe, *American Constitutional Law* 342–44 (1978), plaintiffs could reasonably have believed that the New Jersey tolling statute did not offend the Commerce Clause.

We do not suggest that any decision that extends prior case law creates a "new principle of law" within the meaning of *Chevron.* What is crucial here is the presence of a duly-enacted, and therefore presumptively legitimate, statute on which citizens are normally entitled to rely. We cannot say that such reliance is unreasonable where the statute's constitutionality has never been judicially questioned and where the reach of the constitutional principles involved is as uncertain as here. Thus, the first *Chevron* factor points to nonretroactivity.

The second *Chevron* factor requires us to consider whether retroactive invalidation of the statute will "further or retard [the] operation" of the Commerce Clause principles invoked in *Coons I.* The district court reasoned in this regard: "The purpose of the constitutional rule which governs this case is to free interstate commerce from the burdens which might be imposed by the individual states through which that com-

---

**7.** The parties have argued at length about whether *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), heralds a new approach to the first *Chevron* factor. In *Johnson,* a Fourth Amendment case, the Court referred to this factor as requiring the law-changing decision to be a "clear break with the past." 457 U.S. at 549, 102 S.Ct. at 2587 (quoting *Desist v. United States,* 394 U.S. 244, 248, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248 (1969)); *id.* at 550 n. 12, 102 S.Ct. at 2587 n. 12. We do not read this language as altering the *Chevron* for-

mulation. The *Johnson* Court expressly differentiated criminal and civil retroactivity, stating that "all questions of civil retroactivity continue to be governed by the standard enunciated in" *Chevron,* 457 U.S. at 563, 102 S.Ct. at 2594. Moreover, the Court did not explicate the "clear break" principle in the civil context except to quote from *Chevron.* Finally, the Court recently stressed the narrowness of the *Johnson* approach in *Solem v. Stumes,* 465 U.S. 638, 104 S.Ct. 1338, 1341 n. 3, 79 L.Ed.2d 579 (1984).

merce flows. Retroactive application of *Coons I* furthers that objective; prospective application defeats it." 598 F.Supp. at 971.

Assuming arguendo that the district court correctly stated the purpose of the Commerce Clause rule in this case, we think the burden on interstate commerce that it perceived might result from nonretroactive application of that rule is largely illusory. Certainly, any inhibiting effect the statute might have had on foreign corporations and others contemplating doing buisness in New Jersey vanishes once the statute is invalidated, whether or not that invalidation is retroactive. Moreover, had there been no tolling statute, the probability is that the Cohns and most other plaintiffs similarly situated would have filed suit within the two-year statutory period. Although it is possible that prospective invalidation will permit maintenance of some suits that would not have been timely filed absent the tolling statute, we do not think that this slight marginal burden, if any, does violence to the Commerce Clause.[8]

Finally, equitable considerations also point to nonretroactive application. As in *Chevron*, "[i]t would ... produce the most 'substantial inequitable results' ... to hold that [plaintiff] 'slept on his rights' at a time when he could not have known the time limitation that the law imposed upon him.... [N]onretroactive application simply preserves his right to a day in court." 404 U.S. at 108, 92 S.Ct. at 356. Admittedly, this conclusion is tempered somewhat by the fact, relied on by the district court, that the applicability of the tolling statute to foreign corporations subject to long-arm service was in doubt until well after plaintiffs filed their complaint. However, plaintiffs' apparent interpretation of the statute as applying to such defendants had support in the case law, *see Whalen v. Young*, 28 N.J.Super. 543, 101 A.2d 64 (1953) (limitations period tolled against corporate de-

fendant subject to jurisdiction under nonresident motorist statute), *rev'd on other grounds*, 15 N.J. 321, 104 A.2d 678 (1954); *contra Ferraro v. Ferro Trucking Co.*, 72 N.J.Super. 519, 179 A.2d 74 (1962) (same circumstances—no tolling); *cf. Fidelity Deposit Co. v. Abnagle*, 97 N.J.Super. 132, 234 A.2d 511 (1967) (individual defendant, long-arm jurisdiction—tolling); *Lakovic v. New England Paper Tube Co., Inc.*, 127 N.J.Super. 394, 317 A.2d 426 (1974) (criticizing *Ferraro* ), and was ultimately vindicated. *Velmohos v. Maren Engineering Corp.*, 83 N.J. 282, 416 A.2d 372 (1980). Under these circumstances, this arguable lack of caution on plaintiffs' part should not obscure the fundamental inequity of retroactively shortening the period of limitations applicable to their action. Accordingly, we conclude that the three *Chevron* factors point to a holding of nonretroactivity.

### IV.

Searle argues, however, that the *Chevron* balancing test is inappropriate here. Citing *United States v. U.S. Coin & Currency*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), and *New York v. Cathedral Academy*, 434 U.S. 125, 98 S.Ct. 340, 54 L.Ed.2d 346 (1977), it argues that any holding that the New Jersey tolling statute violates the Commerce Clause must necessarily apply retroactively, regardless of any equitable or other considerations to the contrary.

In *Marino v. Bowers*, 657 F.2d 1363 (3d Cir.1981) (in banc), we rejected a similar argument that "a ruling dealing with fundamental personal rights should never be limited to prospective application." *Id.* at 1365–66. We noted numerous instances in which the Supreme Court as well as this court had given nonretroactive effect to constitutional rulings in civil as well as criminal cases. Id. at 1366; *see also, e.g.,*

---

**8.** The New Jersey Supreme Court has held that, even where the claim is timely under the tolling statute, "[i]f a plaintiff's delay is inexcusable and has resulted in prejudice to the defendant, the latter may raise the equitable defense of

laches to bar the claim." *Velmohos v. Maren Engineering Corp.*, 83 N.J. 282, 292, 416 A.2d 372, 378 n. 10 (1980). Searle is, of course, free to raise this defense on remand.

*Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982) (applying *Chevron* test to determine that holding invalidating grant of jurisdiction to bankruptcy judges under Article III should apply nonretroactively). Thus, there can be no disputing that the *Chevron* test is generally applicable to issues of retroactivity, at least in civil cases.

Nor do the two cases cited by defendant persuade us to carve out an exception to *Chevron* in this case. *U.S. Coin & Currency* holds merely that where the Constitution is held to immunize certain conduct from criminal punishment, as under the self-incrimination clause of the Fifth Amendment, such a holding necessarily operates retroactively. That principle has no applicability here.

*Cathedral Academy* is also inapposite. That case arose out of a New York statute (ch. 138) authorizing the use of state funds to reimburse private schools, including sectarian schools, for certain educational services. After a three-judge court held that ch. 138 violated the Establishment Clause and enjoined any further payments under it, the state legislature enacted a second statute (ch. 996) authorizing reimbursement for services performed in reliance on ch. 138 before its invalidation. In *Cathedral Academy,* the Supreme Court held that payments under ch. 996 also violated the Establishment Clause. The Court noted that the statute was enacted in clear violation of the district court's decree, but held that the dispositive fact was that payments under ch. 996, like those under ch. 138, "will of necessity either have the primary effect of aiding religion, ... or will result in excessive state involvement in religious affairs." 434 U.S. at 133, 98 S.Ct. at 346 (citations omitted).

Whatever *Cathedral Academy* may teach us about retroactivity in the First Amendment context,[9] we are convinced that the decision does not preclude applica-

tion of the *Chevron* retroactivity test where the retroactivity issue arises under the Commerce Clause. The balancing of state and national interests appropriate under the Commerce Clause, *see, e.g., Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970), contrasts sharply with the strict Establishment Clause analysis undertaken in *Cathedral Academy,* and is consistent with the balancing required by *Chevron.* We therefore conclude that the *Chevron* test is the appropriate one in this case.

### V.

Finally, Searle argues that, even if the invalidation of the tolling statute is to be given general nonretroactive effect, we must nevertheless give it the benefit of the tolling statute's invalidation in order to avoid rendering an advisory opinion and to give it the fruit of its efforts to change the law.

We have previously rejected the view that Article III does not permit a federal court to declare a new rule of law to be applied purely prospectively. *Ettinger v. Central Penn National Bank,* 634 F.2d 120, 122–24 (3d Cir.1980). But considerations of Article III power do not end the matter; the fact that we *may* constitutionally do something does not entail that we ought to do it. As a matter of judicial policy, we recognize that the benefits of a new legal principle should normally go to the litigant but for whom the issue would not have come to the court's attention. It is fundamental to our jurisprudence that change in the law, at least in the courts, comes only through the efforts of individual litigants, motivated not by an academic concern for doctrinal correctness but by simple self-interest. *See Stovall v. Denno,* 388 U.S. 293, 301, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967).

It does not follow, however, that application of the new legal principle to the liti-

---

**9.** Neither the Supreme Court nor the lower court in *Cathedral Academy* cited *Chevron* or discussed the retroactivity doctrine.

gants is appropriate under all circumstances, regardless of any other considerations. In *England v. State Board of Medical Examiners*, 375 U.S. 411, 419, 84 S.Ct. 461, 467, 11 L.Ed.2d 440 (1964), for example, the Court refused to apply its holding in the case to the parties before it when to do so would have irremediably prejudiced the party who had reasonably relied on prior law. By contrast, in *McSparran v. Weist*, 402 F.2d 867 (3d Cir.1968), *cert. denied*, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969), in which this court overruled its previous approval of "manufactured" diversity of citizenship as a basis for federal jurisdiction, we applied the new rule to the parties before the court only after finding that dismissing the action on that basis would not result in irremediable harm to the plaintiff who could still institute an action in state court. *Id.* at 876. *See also id.* at 877 (similar analysis to apply to all cases involving causes of action arising before the date of the decision). Dismissal of plaintiffs claim here would, of course, forever bar it. And permitting the case to go forward will not prejudice Searle's defense on the merits. In addition, we note that affirming the district court's dismissal of the suit on the ground that Searle is entitled to the benefit of its constitutional attack on the statute would have the paradoxical effect of denying plaintiffs the benefit of *their* successful appeal on the issue of retroactivity. In sum, the circumstances of this case do not warrant excepting Searle from the generally applicable rule we announce today.

## VI.

We hold, therefore, that the district court erred in applying retroactively its holding that the New Jersey tolling statute violated the Commerce Clause. We reiterate that, we express no view as to the constitutionality *vel non* of the tolling statute. The judgment of the district court will be vacated and the case remanded for further proceedings consistent with this opinion.