**Stephen JUZWIN and Mary Juzwin, his wife**

v.

**ASBESTOS CORPORATION, LTD.,** individually and as successor to Johnson's Company; Carey Canadian Mines; Amtorg Trading Corporation; and Metropolitan Life Insurance Company; Flintkote Mines, Ltd.; Turner & Newall, P.L.C.; John Doe Corporation (a fictitious name representing one or more corporations or companies, engaged in the business of mining, manufacturing, distributing or supplying finished and unfinished asbestos products and fibers to plaintiffs' employer GAF/Ruberoid); Judy Doe Corporations (a fictitious name representing

one or more legal entities who stand in the shoes of the John Doe defendants either as successor in interest, alter ego, or by other equitable doctrine which makes them responsible for the John Doe liability).

**AMTORG TRADING CORP.,**
**Third–Party Plaintiff,**

v.

**LEONARD J. BUCK, INC.,** Flintkote Mines, Ltd., National Gypsum Company and Turner & Newall, P.L.C., Third–Party Defendants.

**and**

**CAREY CANADA, INC.,** Defendant and Third–Party Plaintiff,

v.

**LAC D'AMIANTE DU QUEBEC LIMITEE,** individually and as successor to Lake Asbestos of Quebec, Ltd. and Bell Asbestos Mines Limited,

**and**

Leonard J. Buck, Inc., Third–Party Defendant and Fourth–Party Plaintiff.

v.

**ASSOCIATED ORE & METAL CORP., LTD.,** Fourth–Party Defendant.

**Appeal of CAREY CANADA, INC., Appellant.**

No. 89–5420.

United States Court of Appeals, Third Circuit.

Argued Oct. 16, 1989.

Decided April 10, 1990.

Rehearing and Rehearing In Banc Denied May 9, 1990.

See also, D.C., 718 F.Supp. 1233.

Andrew T. Berry (argued), Kevin J. Connell, Stephen Marinko, McCarter & English, Newark, N.J., for appellant.

Jane B. Cantor (argued), Frances A. Tomes, Garruto, Galex & Cantor, P.C., East Brunswick, N.J., Peter N. Perretti, Jr., Atty. Gen. of N.J., Mary C. Jacobson, Harry Haushalter (argued), Trenton, N.J., Arthur D. Bromberg, Budd Larner Gross Picillo Rosenbaum Greenberg & Sade, P.C., Short Hills, N.J., David M. Katzenstein, Goldfein & Joseph, P.C., Princeton, N.J., Richard V. Jones, Bressler, Amery & Ross, Morristown, N.J., H. Frank Carpenter, Carton, Nary, Witt & Arvanitis, Asbury Park, N.J., Leon B. Piechta, O'Donnell, Kennedy, Vespole & Piechta, West Orange, N.J., for appellees.

Alan M. Darnell, Wilentz, Goldman & Spitzer, Woodbridge, N.J., for amicus curiae.

Before BECKER, COWEN and SEITZ, Circuit Judges.

OPINION OF THE COURT

SEITZ, Circuit Judge.

Carey Canada, Inc., (defendant) appeals from an interlocutory order of the district court denying its motion for summary judgment based on the New Jersey statute of limitations. The district court concluded that N.J.Stat.Ann. § 2A:14-22 (West 1987) (the "tolling statute") is constitutional. Therefore, defendant's failure to designate a representative to accept service of process pursuant to that statute tolled the statute of limitations. The district court certified the order under 28 U.S.C. § 1292(b) (1982). Since that order involves a controlling question of law as to the constitutionality of the tolling statute, we granted permission to appeal.

## I.

Stephen and Mary Juzwin (plaintiffs) brought suit in the Superior Court of New Jersey, alleging that Stephen's asbestos-related ailments were caused by exposure to asbestos fibers supplied by defendant and others. Upon application of defendant Amtorg Trading Corporation, the action was removed to the United States District Court for the District of New Jersey.

Plaintiffs admit that this cause of action arose in 1982 when Stephen Juzwin was diagnosed as having asbestosis and concede that they did not institute legal proceedings within the New Jersey two-year statute of limitations period. *Juzwin v. Amtorg Trading Corp.*, 705 F.Supp. 1053, 1055 (D.N.J.1989). Thus, plaintiffs' action is barred unless, as the district court concluded, that statute of limitations was tolled pursuant to New Jersey's tolling statute. *Id.* at 1059.

New Jersey's tolling statute provides in pertinent part:

If any person against whom there is any of the causes of action specified in sections 2A:14-1 to 2A:14-5 and 2A:14-8 ... is not a resident of this State when such cause of action accrues ... or if any corporation or corporate surety not organized under the laws of this State, against whom there is such a cause of action, is not represented in this State by any person or officer upon whom summons or other original process may be served, when such cause of action accrues ... the time or times during which such person or surety is not residing within this State or such corporation or corporate surety is not so represented within this State shall not be computed as part of the periods of time within which such action is required to be commenced by the section. The person entitled to any such action may commence the same after the accrual of the cause therefor, within the period of time limited therefor by said section, exclusive of such time or times of nonresidence or nonrepresentation.

A corporation shall be deemed represented for purposes of this section if the corporation has filed with the Secretary of State a notice designating a representative to accept service of process.

N.J.Stat.Ann. § 2A:14-22 (West 1987).[1]

Defendant, a corporation formed under the laws of Canada, has no corporate offices in the state of New Jersey, has never been registered to do business there, and has not appointed an agent for service of process with the Secretary of State. Thus, it is not "represented" in New Jersey within the meaning of the tolling statute. It appears to concede, however, that it was properly served under New Jersey's long-arm court rule, N.J.Ct.R. 4:4-4(c)(1).

Citing *Bendix Autolite Corp. v. Midwesco Enters., Inc.*, 486 U.S. 888, 108 S.Ct. 2218, 100 L.Ed.2d 896 (1988), defendant moved for summary judgment on the ground that the tolling statute violates the

---

1. New Jersey's present tolling statute was adopted in 1984, replacing a statute found unconstitutional in *Coons v. American Honda Motor Co.,* 94 N.J. 307, 463 A.2d 921 (1983) (*Coons I*), *on rehearing,* 96 N.J. 419, 476 A.2d 763 (1984) (*Coons II*), *cert. denied,* 469 U.S. 1123, 105 S.Ct. 808, 83 L.Ed.2d 800 (1985). The New Jersey Supreme Court held that requiring a foreign corporation to obtain a "certificate of authority" to do business in New Jersey in order to achieve "representation" and gain the benefits of the statute of limitations unconstitutionally burdened interstate commerce. *Id.* 463 A.2d at 927.

commerce clause. In *Bendix,* the Supreme Court invalidated an Ohio tolling statute which required a foreign corporation to subject itself to the general jurisdiction of the Ohio courts, "whether or not the transaction in question had any connection with Ohio," in order to gain the protection of its statute of limitations. *Bendix,* 486 U.S. at 892, 108 S.Ct. at 2221.

The district court concluded that, unlike the Ohio statutory scheme, the New Jersey tolling statute does not compel the conclusion that designation of an agent for service of process subjects a foreign corporation to the general jurisdiction of the New Jersey courts. The court noted the Secretary of State's practice of accepting designations of a representative for service of process only for causes of action having a nexus with New Jersey. Such a limited designation, the court held, imposed no unconstitutional burden on interstate commerce.

## II.

As we read *Bendix,* the New Jersey tolling statute would be invalid if it were applied to all foreign corporations, regardless of their connection with New Jersey. However, we will assume without deciding that the New Jersey Supreme Court would interpret the statute to permit designation of an agent for service of process only for causes of action having a nexus with New Jersey. The issue then becomes whether the statute so interpreted still constitutes an impermissible burden on interstate commerce. Our standard of review is plenary.

█ It may be helpful at the outset if we review the three standards of review that are applied in performing a dormant commerce clause inquiry:

1) state actions that purposefully or arbitrarily discriminate against interstate commerce or undermine uniformity in ar-

eas of particular federal importance are given heightened scrutiny; 2) legislation in areas of peculiarly strong state interest is subject to very deferential review; and 3) the remaining cases are governed by a balancing rule, under which state law is invalid only if the incidental burden on interstate commerce is clearly excessive in relation to the putative local benefits.

*Ford Motor Co. v. Insurance Comm'r of Pa.,* 874 F.2d 926, 941 (3d Cir.1989), *cert. denied sub nom. United Services Auto. Ass'n v. Foster,* —— U.S. ——, 110 S.Ct. 418, 107 L.Ed.2d 382 (1989) (citing *Norfolk Southern Corp. v. Oberly,* 822 F.2d 388, 398–99 (3d Cir.1987)).[2]

█ While heightened scrutiny is the standard of review for simple economic protectionism, "[this] category of protectionism includes those state measures that discriminate on their face against out-of-state interests or in favor of in-state interests." *Norfolk Southern Corp.,* 822 F.2d at 400 (citations omitted). Because the New Jersey tolling statute applies to out-of-state corporations but not to New Jersey corporations,[3] it comes within the class of statutes that are subject to heightened scrutiny. *See Old Coach Dev. Corp. v. Tanzman,* 881 F.2d 1227, 1231 (3d Cir. 1989) (citations omitted).

█ To pass the heightened scrutiny test, the state is required to "demonstrate both that the statute 'serves a legitimate local purpose,' and that this purpose could not be served as well by available nondiscriminatory means." *Id.* (quoting *Maine v. Taylor,* 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110 (1986) (quoting *Hughes v. Oklahoma,* 441 U.S. 322, 336, 99 S.Ct. 1727, 1736, 60 L.Ed.2d 250 (1979)). "In practice, such heightened scrutiny is applied with considerable rigor and turns out to be 'a virtually *per se* rule of invalidi-

---

**2.** None of the parties argue that the correct standard to be applied to the New Jersey tolling statute is that of deferential review. New Jersey has, of course, a legitimate interest in facilitating the claims of its citizens, but we are not here concerned with a "peculiarly strong" state interest, such as public health or safety. These are

the areas that most commonly invoke the deferential standard.

**3.** The critical words are "any corporation or corporate surety not organized under the laws of this State." N.J.Stat.Ann. § 2A:14–22 (West 1987).

ty.'" *Norfolk Southern Corp.*, 822 F.2d at 400 (quoting *Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978)).

■ As the district court recognized, New Jersey has a legitimate interest in "assist[ing] New Jersey citizens to pursue their claims against foreign corporations." New Jersey Senate Judiciary Committee's Statement to Senate Bill 953 (1984), dated February 23, 1984. The tolling statute is designed to further that interest by suspending "the running of the statute of limitations for foreign corporations that are not represented in New Jersey and thus cannot be reached with service of process." *Id.*

However, "[t]he purpose of the statute is not confined to providing relief when service is impossible. Even where absent residents could be served outside the State, the statute still provides for tolling." *Velmohos v. Maren Eng'g Corp.*, 83 N.J. 282, 416 A.2d 372, 380 (1980), *vacated*, 455 U.S. 985, 102 S.Ct. 1605, 71 L.Ed.2d 844 (1982). We think New Jersey's legitimate interest could adequately be protected by a statute that permits a court to order the statute of limitations to be tolled when it is satisfied that, in spite of diligent efforts, long-arm service cannot be effectuated either because the corporation is beyond the reach of the long-arm rule or because it cannot be found for mail service. *See Bendix*, 486 U.S. at 898, 108 S.Ct. at 2224 (Scalia, J.,

concurring). Indeed, there is a somewhat related procedure in New Jersey with respect to unknown defendants.[4]

While a narrowly tailored statute would still differentiate between in-state and out-of-state defendants, the differentiation would be based on the inability to locate or reach, not on the attribute of being foreign. "[W]hatever [a state's] ultimate purpose, it may not be accomplished by discriminating against articles of commerce coming from outside the State *unless* there is some reason, apart from their origin, to treat them differently." *Philadelphia v. New Jersey*, 437 U.S. 617, 626–27, 98 S.Ct. 2531, 2536–37, 57 L.Ed.2d 475 (1978) (emphasis added).

Thus, we hold that the New Jersey tolling statute is invalid under heightened scrutiny[5] because New Jersey has offered no reason why the state's legitimate purpose could not be served as well by the adoption of a more narrowly drawn statute.[6] *See Old Coach Dev. Corp.*, 881 F.2d at 1234.

In spite of our holding, we are constrained, as was the Supreme Court in *Brown–Forman Distillers v. New York Liquor Auth.*, 476 U.S. 573, 579, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552 (1986), to recognize how difficult it is to draw the line between a statute that is virtually *per se* invalid and one that must be analyzed under the balancing test enunciated in *Pike v.*

---

4. New Jersey court rules permit plaintiffs to file complaints against "John Doe" defendants. N.J. Ct.R. 4:26–4 provides in pertinent part:

   [I]f the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient to identify him.

   "[T]he complaint may be amended after the statute of limitations has run to substitute the defendant's true name and effect service on him, particularly where the defendant can show neither prejudice resulting from nor reliance upon the lapse of time." Pressler, Current N.J. Court Rules, Comment R. 4:26–4 at 905 (1989) (citing *Farrell v. Votator Div. of Chemetron Corp.*, 62 N.J. 111, 299 A.2d 394 (1973)).

   However, the New Jersey fictitious defendant rule is not available to a plaintiff in federal court since it is a procedural device, not a rule of substantive law. Fed.R.Civ.P. 15(c), the

analogous federal rule, does not permit the amendment to relate back.

5. Compare *Abramson v. Brownstein*, 897 F.2d 389, 392 (9th Cir.1990), where the Ninth Circuit recently applied the balancing test to the California tolling statute since "[o]n its face, California's tolling statute is nondiscriminatory because it treats alike residents and nonresidents of California." The court declared the statute unconstitutional under the commerce clause because, "[l]ike the defendant in *Bendix*, the California long arm statute would have permitted service on Brownstein throughout the limitations period." *Id.* at 393.

6. Since we hold that the statute is invalid under the commerce clause because it impermissibly burdens interstate commerce, we do not reach defendant's argument that it should be struck down as a burden on foreign commerce.

*Bruce Church, Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

Plaintiffs argue that *Bendix* mandates use of the less rigorous *Pike* balancing test. We disagree. The *Bendix* court said:

> The Ohio statute before us *might* have been held to be a discrimination that invalidates without extended inquiry. We *choose,* however, to assess the interests of the State, to demonstrate that its legitimate sphere of regulation is not much advanced by the statute while interstate commerce is subject to substantial restraints.

*Bendix,* 486 U.S. at 891, 108 S.Ct. at 2220 (emphasis added). We read this passage to mean that either approach is permissible. As in *Bendix,* however, the selection of the test in this case is not outcome-determinative, for even under the balancing test, the statute cannot survive.

Under the *Pike* test, if the state interest being advanced by the statute outweighs the burden imposed on interstate commerce, then the statute is valid, unless some less onerous means could be adopted by the state that would accomplish its purpose. *Pike,* 397 U.S. at 142, 90 S.Ct. at 847.

While the state has articulated a legitimate interest in assisting its citizens to pursue their claims against foreign corporations, New Jersey's long-arm rule provides a relatively simple means of promptly effecting service of process on most foreign corporations. It is true that long-arm service is procedurally more demanding for a plaintiff than service on a New Jersey agent. However, once a plaintiff has determined "after diligent inquiry" that personal service cannot be made in New Jersey and that out-of-state service is "consistent with due process of law," then service may be effectuated, at less expense than personal service, by registered or certified mail directed to the corporation's principal place of business. N.J.Ct.R. 4:4-4(c)(1).

This method does not seem unduly burdensome for the party initiating the action.

Plaintiffs argue that in order to use the long-arm rule, one must first locate the defendant. As we indicated in the foregoing discussion, a more narrowly drawn tolling statute would still assist New Jersey citizens to pursue claims against foreign defendants who cannot be found by tolling the statute of limitations, thereby eliminating that possible defense.

Opposite the putative local benefit of the tolling statute we must place the burden on interstate commerce. Since the New Jersey statute does not on its face indicate whether designation of an agent for service of process subjects a corporation to general or limited jurisdiction, it is impossible for a foreign corporation to discern from the statute's wording what the consequences of designating an agent will be. Thus, prudence dictates that foreign corporations wishing to avail themselves of New Jersey's statute of limitations must inquire as to the consequences of designation under the statute. Moreover, given the wording of the tolling statute, foreign corporations may be understandably reluctant to rely on an informal practice of an administrative or executive body to protect themselves from exposure to the general jurisdiction of New Jersey.

We disagree with the district court's conclusion that the burdens on interstate commerce are no more than the need to determine the consequences of designating an agent and the act of designating such an agent. The real burden is that foreign corporations unrepresented but possibly amenable to long-arm service must make the difficult choice whether to file designations (with uncertain consequences) or forego a potential limitations defense, a burden that neither New Jersey corporations nor foreign corporations registered to do business in New Jersey bear.[7]

---

**7.** The origins of the New Jersey tolling statute date back to 1820. *Velmohos v. Maren Eng'g Corp.,* 83 N.J. 282, 416 A.2d 372, 376 (1980), *vacated,* 455 U.S. 985, 102 S.Ct. 1605, 71 L.Ed.2d 844 (1982). In the original version, there was no specific reference to corporations. *Id.* The tolling statute remained largely unchanged until 1949, when the legislature amended it to provide an exemption for domestic corporations and those foreign corporations maintaining representatives in New Jersey, thereby extending to

The magnitude of such a burden on many nonresident corporations is grossly disproportionate to the state's interest in assisting resident plaintiffs in the pursuit of claims against foreign corporations.

Thus, even with a limiting construction, N.J.Stat.Ann. § 2A:14–22 violates the commerce clause under either test since a non-discriminatory procedure, less burdensome to interstate commerce, could be adopted by New Jersey.

### III.

The parties urge that, if we find the New Jersey statute unconstitutional, we should then go on to decide whether our ruling applies retroactively. Although the retroactivity issue was not part of the question certified under section 1292(b), we recognize that our review is of orders and not of isolated legal questions. *Miller v. Bolger*, 802 F.2d 660, 666 (3d Cir.1986). "It follows that we are free to consider 'all grounds advanced in support of the grant of summary judgment and all grounds suggested for sustaining its denial.' " *Id.* (citations omitted). Thus, we turn now to consideration of the retroactivity issue.

Plaintiffs argue that we are obliged to follow the lead of the New Jersey Supreme Court which previously held in *Coons II* that the unconstitutionality of the prior tolling statute would be prospectively applied. Plaintiffs are mistaken. As we said in *Cohn v. G.D. Searle & Co.*, 784 F.2d 460 (3d Cir.), *cert. denied*, 479 U.S. 883, 107 S.Ct. 272, 93 L.Ed.2d 248 (1986), "Where a state statute is held to violate the federal Constitution, the retroactivity *vel non* of that holding is similarly a matter of federal law which we must determine independently." *Id.* at 463 (citations omitted).

As the Supreme Court has noted, "The process of reconciling the constitutional interests reflected in a new rule of law with reliance interests founded upon the old is 'among the most difficult of those which have engaged the attention of courts, state and federal.…' " *Lemon v. Kurtzman*, 411 U.S. 192, 198, 93 S.Ct. 1463, 1468, 36 L.Ed.2d 151 (1973) (*Lemon II*) (quoting *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374, 60 S.Ct. 317, 318, 84 L.Ed. 329 (1940)). It is not surprising, then, that modern jurisprudence recognizes no set principle of retroactivity.[8] Instead, modern decisions reflect a balancing approach which recognizes that "statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct." *Id.* at 199, 93 S.Ct. at 1468. Justice Harlan aptly called this approach the "ambulatory retroactivity doctrine." *Mackey v. United States*, 401 U.S. 667, 681, 91 S.Ct. 1160, 1174, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring).

In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court stated a three-factor test for determining whether a new rule of law is to be applied retroactively:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must … weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by

---

them the benefits of the state's statutes of limitations. *Id.* 416 A.2d at 377.

8. Thus, a decision may be applied retroactively, nonretroactively or even prospectively. "Retroactive" describes judgments applicable in all cases, regardless of when the cause of action arose or the case was litigated. "Nonretroactive" judgments are those that apply the "new" law to the parties before the court and future cases, but not previous or pending cases. "Pro-

spective" judgments govern only future cases, reaching neither the parties before the court nor any previous or pending cases. *Cohn*, 784 F.2d at 462 n. 5 (citing *Marino v. Bowers*, 657 F.2d 1363, 1375 n. 4 (3d Cir.1981) (Weis, J., dissenting). *See generally* Beytagh, *Ten Years of Non-Retroactivity: A Critique and a Proposal*, 61 Va. L.Rev. 1557 (1975); R. Aldisert, *The Judicial Process* 877–938 (1976).

retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

404 U.S. at 106–07, 92 S.Ct. at 355 (citations omitted).[9]

The application of the *Chevron* factors is particularly difficult where, as here, we are determining the appropriate scope of federal equitable remedies regarding the enforcement of a state statute during the period before it was declared unconstitutional. *Lemon II,* 411 U.S. at 199, 93 S.Ct. at 1468. Our task in such cases is to shape the remedy as a blend of what is necessary, what is fair, and what is workable. *Id.* at 200, 93 S.Ct. at 1469.

Because of the continuing presumption in favor of retroactivity, we can refuse to give the rule retroactive effect only where on balance the weight of the three *Chevron* factors favors prospective application. *See, e.g., Al–Khazrahji v. Saint Francis College,* 784 F.2d 505, 514 (3d Cir.1986), *aff'd,* 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) (where two of the three *Chevron* factors were present and the third was neutral, decision would be prospectively applied). *But cf. Smith v. City of Pittsburgh,* 764 F.2d 188, 197 (3d Cir.1985) (where first factor favored retroactive application and other two factors did not militate against it, decision would be retroactively applied). The party seeking to avoid retroactive application bears the burden of persuasion. *Ackinclose v. Palm Beach County, Fla.,* 845 F.2d 931, 933 (11th Cir. 1988) (citation omitted). *Accord Zemonick v. Consolidation Coal Co.,* 762 F.2d 381, 391 (4th Cir.1985) (Ervin, J., dissenting), *rev'd on rehearing,* 796 F.2d 1546, *cert. denied,* 479 U.S. 1018, 107 S.Ct. 671, 93 L.Ed.2d 723 (1986).

Turning then to the first factor, we must ask whether our decision overrules clear past precedent on which the parties may have relied or decides an issue of first impression whose resolution was not clearly foreshadowed. This requires us to examine the state of the law from the time plaintiffs' cause of action arose until they filed their complaint.

Plaintiffs admit that Stephen Juzwin's asbestosis was diagnosed on August 16, 1982, and concede that, in filing their complaint on July 24, 1987, they did not institute suit within the applicable two-year statute of limitations. *Juzwin v. Amtorg Trading Corp.,* 705 F.Supp. 1053, 1055 (D.N.J.1989). The critical period therefore is between August 16, 1982, and July 24, 1987.

The first hint of a commerce clause problem with the New Jersey tolling statute came early in 1982 with the Supreme Court's decision in *G.D. Searle & Co. v. Cohn,* 455 U.S. 404, 102 S.Ct. 1137, 71 L.Ed.2d 250 (1982). The Court, while affirming this court's holding that the statute did not violate the equal protection and due process clauses, vacated the judgment and remanded for consideration of the commerce clause. Thus, when plaintiffs' cause of action accrued, the tolling statute had been attacked but not struck down.

While *Cohn* was pending on remand in the district court, the New Jersey Supreme Court declared the statute unconstitutional under the commerce clause in mid–1983 and held that its decision was to be applied retroactively. *Coons v. American Honda Motor Co.,* 94 N.J. 307, 463 A.2d 921 (1983) (*Coons I*), *on rehearing,* 96 N.J. 419, 476 A.2d 763 (1984) (*Coons II*), *cert. denied,* 469 U.S. 1123, 105 S.Ct. 808, 83 L.Ed.2d 800 (1985). At this point in time, plaintiffs had lost the protection of any tolling statute, with one year of the two-year limitations

---

**9.** We have applied these criteria in a number of cases where the statute of limitations was at issue. *See, e.g., Hill v. Equitable Trust Co.,* 851 F.2d 691 (3d Cir.1988), *cert. denied sub nom. Data Controls North, Inc. v. Equitable Bank Nat'l Assoc.,* — U.S. —, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989); *Al–Khazraji v. Saint Francis College,* 784 F.2d 505 (3d Cir.1986), *aff'd,* 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987); *Goodman v. Lukens Steel Co.,* 777 F.2d 113 (3d Cir.1985), *aff'd,* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); *Fitzgerald v. Larson,* 769 F.2d 160 (3d Cir.1985); *Smith v. City of Pittsburgh,* 764 F.2d 188 (3d Cir.), *cert. denied,* 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985).

period remaining. Nevertheless, they did not file their complaint. In June 1984, just two months before plaintiffs' cause of action would have expired under the two-year statute of limitations, the New Jersey Supreme Court on rehearing held that its decision in *Coons I* was to be applied prospectively. *Coons v. American Honda Motor Co.*, 96 N.J. 419, 476 A.2d 763 (1984) (*Coons II*), *cert. denied*, 469 U.S. 1123, 105 S.Ct. 808, 83 L.Ed.2d 800 (1985). The court further stated that the statute of limitations as to foreign, unrepresented corporations would commence to run as of August 3, 1983, the date of *Coons I. Id.* at 773. Plaintiffs now had an additional year within which to file suit, yet they did not do so.

In August of 1984, the New Jersey legislature amended the tolling statute in an effort to correct the constitutional infirmity. Plaintiffs once again had a tolling statute to rely on since a duly enacted state or federal law is presumptively valid under the Constitution. *See Cohn*, 784 F.2d at 464.

However, in December of 1984, the district court, while agreeing with the New Jersey Supreme Court that the pre–1984 tolling statute violated the commerce clause, stated that it was not bound by *Coons II*, since federal, not state, law governs the issue of retroactivity, and held that its decision was to be applied retroactively. *Cohn v. G.D. Searle & Co.*, 598 F.Supp. 965, 969 (D.N.J.1984), *vacated*, 784 F.2d 460 (3d Cir.), *cert. denied*, 479 U.S. 883, 107 S.Ct. 272, 93 L.Ed.2d 248 (1986). Once again, plaintiffs' cause of action was in jeopardy since the initial two-year limitations period had expired earlier that year, and it was not clear whether the *Coons II* limitations period was available to them. But, plaintiffs made no apparent effort to file their complaint.

This court reversed the district court in 1986, holding that the decision was to be applied prospectively only. *Cohn*, 784 F.2d at 465. Plaintiffs' claim was revived once more. Still, plaintiffs delayed, allowing an additional year and a half to pass before filing.

Plaintiffs in this case are quite unlike the plaintiffs in *Cohn* (brought suit in state court in 1974 and defendant removed to federal court) and *Coons* (initiated suit in state court in 1978), who relied on a statute with origins dating back to 1820 that had remained unchanged for some 25 years, that had withstood constitutional attack more than 10 years earlier, and that had never been attacked on commerce clause grounds. Here, to the contrary, there was no clear precedent governing the earlier tolling statute upon which plaintiffs might have relied. A commerce clause issue had been raised and remained unresolved at the time their cause of action accrued.

This court has held that when a definitive ruling on the appropriate limitations period was lacking at the time plaintiffs delayed bringing suit, plaintiffs in such cases could not justify the delay. *See Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir.1985), *aff'd*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); *Fitzgerald v. Larson*, 769 F.2d 160 (3d Cir.1985); and *Smith v. City of Pittsburgh*, 764 F.2d 188 (3d Cir.), *cert. denied*, 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985), where we refused to apply the decision in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), prospectively. *Cf. Al–Khazraji v. Saint Francis College*, 784 F.2d 505 (3d Cir.1986), *aff'd*, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) (there was clear precedent upon which plaintiff had the right to rely).

Indeed, there was no precedent at all interpreting the new tolling statute on which plaintiffs here ultimately relied. Furthermore, it was a foregone conclusion that there would be a constitutional attack on the amended tolling statute. The question, then, becomes whether our decision in this case was clearly foreshadowed.

The practice that our decision finds impermissible under the commerce clause is tolling the statute of limitations against foreign corporations unrepresented in New Jersey, regardless of whether or not they may be served under the New Jersey long-arm court rule. As early as 1963, nonresident defendants had challenged the New

Jersey tolling statute, arguing that its "representation" requirement ought to be interpreted to mean "amenability to service." *See Lemke v. Bailey,* 41 N.J. 295, 196 A.2d 523 (1963) (statute not unconstitutional on theory it denied equal protection, even though individual nonresident motorist defendants were subject to service of process via Director of Motor Vehicles).

A similar argument was made in terms of New Jersey's long arm court rule and rejected in *Velmohos v. Maren Eng'g Corp.,* 83 N.J. 282, 416 A.2d 372 (1980), *vacated,* 455 U.S. 985, 102 S.Ct. 1605, 71 L.Ed.2d 844 (1982), where the court held that procedural difficulties in effecting long-arm service supplied a rational basis for different treatment of those amenable to service in New Jersey and those that could only be served outside the jurisdiction. However, it was clear, even then, that New Jersey's interpretation of its tolling statute placed it with a minority of jurisdictions. As this court noted in *Hopkins v. Kelsey–Hayes, Inc.,* 628 F.2d 801, 807 n. 11 (3d Cir.1980), *vacated sub nom. G.D. Searle & Co. v. Cohn,* 455 U.S. 404, 102 S.Ct. 1137, 71 L.Ed.2d 250 (1982), many other state courts have construed their tolling provisions differently so that out-of-state defendants amenable to long-arm jurisdiction are exempt from the tolling of the statute of limitations.[10] The *Velmohos* court distinguished the New Jersey tolling statute on the basis that the statutes of other states were phrased in terms of "absence" not "representation."

While *Velmohos* resolved the statutory issue regarding the correct interpretation of "representation," it did not resolve the constitutional question which resurfaced in the commerce clause context in a pair of cases, one working its way through the state court system (*Coons*) and one through the federal court system (*Cohn*). The New Jersey Supreme Court struck down the tolling statute in *Coons I* on the grounds that requiring a foreign corporation to obtain a certificate to do business in New Jersey in order to achieve "represen-

tation" in the context of the tolling statute constituted an impermissible burden on interstate commerce. It had no need to address the issue of whether requiring a foreign corporation to be served within the jurisdiction to obtain the benefit of the state's limitations statutes violated the commerce clause. Thus, when the New Jersey legislature amended the statute to correct the problem of "how" to achieve "representation," it did not consider the issue of "amenability to service."

When we rejected the equal protection and due process challenges to New Jersey's tolling statute, we were careful to recognize that it was only necessary for the statute to be rationally related to a legitimate government purpose since this constitutional minimum is all that is required for equal protection and due process purposes. *Hopkins,* 628 F.2d at 811. It is well understood, however, that distinctions that suffice for equal protection purposes may be insufficient to withstand commerce clause analysis. *See Bendix,* 486 U.S. at 894, 108 S.Ct. at 2222. Given the protracted litigation occasioned by this statute, the more than 25–year preoccupation with the issue of "amenability to service" and our carefully worded holding in *Hopkins,* we do not think that our decision here can be termed "superseding legal doctrine that was quite unforeseeable." *See Chevron,* 404 U.S. at 108, 92 S.Ct. at 356. Nor are we persuaded that our decision signals an abrupt change in clearly established law, as was the case in *Coons* and *Cohn.* *Chevron's* first factor, therefore, favors retroactive application.

The second factor under *Chevron* requires us to "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." 404 U.S. at 106–07, 92 S.Ct. at 355–56. There has been some confusion in the case law as to the term "rule," with some courts interpreting it to mean the underlying con-

---

**10.** *See generally* Annotation, *Tolling of Statute of Limitations During Absence from State as Affected by Fact that Party Claiming Benefit of Limita-* *tions Remained Subject to Service During Absence or Nonresidence,* 55 A.L.R.3d 1158 (1974).

stitutional principle and others, the particular decision of the court. Thus, in *Cohn,* the district court focused on the purpose of the commerce clause, "to free interstate commerce from the burdens which might be imposed by the individual states." *Cohn,* 598 F.Supp. at 971. We assumed for the purposes of our argument that the district court had characterized the purpose of the rule correctly. *Cohn,* 784 F.2d at 465. However, we think the better interpretation of the term "rule" is that it refers to the ruling of the court and that the underlying constitutional principle is the "fulcrum" of the ruling. *See Lemon II,* 411 U.S. at 201, 93 S.Ct. at 1469.

The purpose of our ruling, then, is to prevent New Jersey from discriminating against out-of-state corporations solely on the basis that they cannot be served within the state. The ruling recognizes the principle that "[o]ne who by law is subject to a state's jurisdiction is effectively present and represented within that state." *Cohn v. G.D. Searle & Company,* 447 F.Supp. 903 at 912 (D.N.J.1978) (citations omitted). The effect of our ruling is to ensure that, like New Jersey corporations, foreign corporations that at all times are amenable to service of process under the long-arm rule have the benefit of the state's statutes of limitations. Implementation of our decision will bring New Jersey law into conformity with the rule in the majority of states, that amenability to process by long-arm service renders a tolling statute inapplicable. To give our ruling only prospective effect would retard the purpose of the rule by allowing an entire class of plaintiffs to pursue claims against foreign corporations that the statute of limitations would bar against New Jersey corporations. Thus, we conclude that the second factor favors retroactivity as well.

The final *Chevron* factor involves a balancing of the equities of retroactive application so as to avoid harsh, unjust or inequitable results. "It is well established that reliance interests weigh heavily in the shaping of an appropriate equitable remedy." *Lemon II,* 411 U.S. at 203, 93 S.Ct. at 1470 (citations omitted). We have recognized that, in practice, this consideration overlaps with the first factor so that if plaintiffs could have reasonably relied on the tolling statute, it would be inequitable to give retroactive application to a shorter limitations period. *Fitzgerald,* 769 F.2d at 164.

However, in this case, given the precarious constitutional status of the New Jersey tolling statute, we do not find that plaintiffs' reliance was reasonable. Furthermore, plaintiffs offer no explanation for why they delayed filing during this period of uncertainty. It must be remembered that plaintiffs bear the burden of proof on each factor, and it is not enough merely to argue "unfair!" We are mindful that application of our decision to plaintiffs will deny them the opportunity of obtaining a decision on the merits of their case, but we find that the law was not sufficiently clear for them to have delayed filing.

On the other side of the equation, we find that it would be inequitable to continue to apply a different limitations period to out-of-state corporations merely because they could not be served within the state of New Jersey. Defendants raise an additional argument, which we find relevant here, namely, the hardship to third-party defendants if we apply our decision prospectively. The right of a defendant to seek contribution from a joint tortfeasor under N.J. Stat.Ann. § 2A:53A–1, *et seq.* (West 1987), is not affected by the running of the limitations period. Thus, even New Jersey corporations and foreign corporations who have complied with the provisions of the tolling statute would continue to be deprived of the protection of the statute of limitations when they were joint tortfeasors with a nonrepresented foreign corporation.

Where on balance the equities favor retroactive application of our decision, we ought to follow the normal rule that the benefits of a new legal principle should go to the litigant but for whom the issue would not have come to the court's attention. *Cohn,* 784 F.2d at 466. "It is fundamental to our jurisprudence that change in the law, at least in the courts, comes only through the efforts of individual litigants, motivated not by an academic concern for

doctrinal correctness but by simple self-interest." *Id.* (citation omitted).

After due consideration of the three *Chevron* factors as applied to the facts of this case, we conclude that our decision invalidating the New Jersey tolling statute on commerce clause grounds should be applied retroactively. Plaintiffs have not established that their reliance on the new tolling statute was reasonable in light of the uncertain state of the law. Thus, application of our decision to their claim would not be inequitable or harsh. Finally, retroactive application will further the purposes underlying our decision.

Accordingly, the order of the district court filed on February 28, 1989, upholding the constitutionality of the New Jersey tolling statute, N.J.Stat.Ann. 2A:14–22, and denying summary judgment, will be reversed with a direction to enter judgment for Carey Canada.